UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-20327-cr-ALTONAGA/GOODMAN

UNITED STATES OF AMERICA

vs.

TRACEY JORDAN SELLERS,

Defendant.
_____/

## JOINT FACTUAL STATEMENT

This Joint Factual Statement contains an agreed statement of the facts and circumstances that accompany the above-referenced criminal case and Plea Agreement signed and dated this same day between the United States of America and the defendant, Tracey Jordan Sellers (hereinafter referred to as "SELLERS")  The defendant is pleading guilty to the one-count Information because she is in fact guilty.   The defendant certifies and hereby admits that the facts and circumstances set forth below are true and, were the case to go to trial, the United States would be able to prove these specific facts and others beyond a reasonable doubt, meeting all of the elements, with respect to the count charged in the criminal Information, meeting the elements of the crime charged.

1)      SELLERS began employment with the U.S. Army Corps of Engineers ("USACE") in 2001.   At all relevant times, she was a Biologist and Lead Biologist for the Planning & Policy Division, Environmental Branch, and Coastal Section of the USACE Jacksonville District.   She coordinated the development of environmental plans and documents for USACE, coordinated with federal, state, and local agencies, monitored the environmental compliance of USACE activities in Florida, and assessed potential impacts from USACE projects.

2)      At all relevant times, an environmental consulting company ("COMPANY")

performed substantial work as a contractor and sub-contractor for major USACE dredging projects in South Florida.   Some of COMPANY's contracts related to dredging projects exceeded millions of dollars in value.

3)   SELLERS participated substantially in USACE's management of coastal dredging projects in the Southern District of Florida.   In particular, SELLERS performed technical reviews of COMPANY's involvement in dredging projects in the Southern District of Florida and in Miami, Florida.

4)   Federal ethics laws and regulations governed the relationship of federal employees, such as SELLERS, with outside entities such as COMPANY.

5)   Unbeknownst to the USACE Jacksonville District, SELLERS violated these laws and regulations for the benefit of COMPANY, including but not limited to the following violations:

a.   SELLERS used her personal, non-USACE email account to share sensitive, internal draft government documents that she received in her official capacity at USACE with COMPANY.   The internal draft documents were created by both USACE and other agencies.   SELLERS forwarded them from her official USACE email account to her personal email account, and then sent them from her personal email account to COMPANY while commenting, "You didn't get this from me."

b.   SELLERS used her personal, non-USACE email account to participate in private email conversations with employees of COMPANY in which they discussed environmental problems with a dredging project in frank terms.   This information was highly pertinent to USACE's oversight of the dredging project.   SELLERS

2

neither forwarded these conversations to her official USACE email account nor shared the contents of them with her colleagues and management at USACE.

 c. SELLERS used her personal, non-USACE email and social media accounts to assist COMPANY in contract negotiations and to share sensitive internal government estimates in an effort to benefit COMPANY.

6) In November 2014, a senior member of COMPANY approached SELLERS through her personal, non-USACE email account and offered her a part-time job with COMPANY related to a bid proposal that COMPANY planned to submit to a state agency in North Carolina. SELLERS did not seek or obtain approval from USACE ethics officials. Instead, in an exchange occurring through her non-USACE email account, SELLERS indicated her interest in assisting COMPANY with the project, provided her resume to COMPANY, and reviewed and made suggested edits to part of COMPANY's bid proposal. Because this state project would later be reviewed by USACE's Wilmington District, SELLERS agreed to limit her participation to "technical writing support only" and suggested that she not attend any meetings with USACE. In the winter and spring of 2015, SELLERS used her personal email and social media accounts to seek status updates from the senior member of COMPANY about the project. There was no negotiation of COMPANY's payment of SELLERS for this work.

7) In October of 2018, the same senior member of COMPANY approached SELLERS through her non-USACE, personal email account and offered her a second part-time job with COMPANY on another project in North Carolina. This project would likewise receive regulatory review from USACE's Wilmington District, and the senior member of COMPANY stated that COMPANY would keep SELLERS's participation "confidential of course." In an exchange

3

conducted through her non-USACE email account, SELLERS provided advice about the project and asked for a contract for her services.   On December 8, 2018, SELLERS received from, signed, and returned to COMPANY an independent consultant contract agreeing to pay SELLERS up to $9,000.00 over a six-month period at the rate of $50.00 per hour.   Additionally, SELLERS received project materials from, forwarded materials to, scheduled phone calls with, and participated in tele-conferences with COMPANY related to the project.   At no time did SELLERS seek or obtain authorization from USACE ethics officials to participate in this COMPANY project.

8)      In January 2019, the same senior member of COMPANY approached SELLERS through her non-USACE email account and offered SELLERS a third part-time job with COMPANY.   Specifically, COMPANY's senior member inquired whether she was interested in "some more consulting work" on a COMPANY proposal for a project in Louisiana.   The senior member of COMPANY indicated that the project would receive regulatory review from USACE. The next day, SELLERS used her non-USACE email account to ask for an independent consulting contract for this project.   The senior member noted that, if COMPANY were to win the project, "there could be more work for you" than on the North Carolina project.   SELLERS did not seek or obtain authorization from USACE's ethics officials to participate in this COMPANY project.

9)      On February 8, 2019, two special agents conducted a recorded interview of SELLERS in an office on the premises of the USACE Jacksonville District.   The agents began the recorded interview by providing SELLERS both *Miranda* and *Garrity* warnings.   The agents advised SELLERS that it was a crime to lie during the interview.   After receiving these advisements, SELLERS knowingly and voluntarily agreed to answer questions.

4

10)   The agents asked SELLERS whether she had ever received any job offers from COMPANY.   SELLERS responded that she had performed some work for COMPANY over a decade ago, but that she had obtained authorization from USACE and declared this income to the IRS.   The project was distinct from COMPANY's November 2014 offer, its October 2018 offer, and its January 2019 offer to SELLERS.

11)   SELLERS failed to mention COMPANY's November 2014 offer to work on a COMPANY bid proposal until the agents confronted her with documents that demonstrated COMPANY's offer of work.   After reviewing the documents, SELLERS falsely stated that she did not accept the offer.

12)   SELLERS stated to the agents that, in November of 2018, the senior member of COMPANY approached her about a project in North Carolina.   She falsely stated, however, that she had not "written anything or done anything or participated in any meetings because I wanted to talk to [USACE's] Office of Counsel about whether or not that would be considered a conflict of interest."

13)   The agents then asked SELLERS whether she had ever received any other job offers from COMPANY, and SELLERS falsely stated, "No."   This statement omitted any reference to COMPANY's January 2019 offer of work on a COMPANY project in Louisiana, and SELLERS's request for a contract for her services in response.

14)   SELLERS made these false statements knowingly and willfully in an effort to hide the extent of her illicit relationship with COMPANY.

15)     Shortly after the conclusion of her recorded interview, SELLERS used a personal, non-USACE social media account to communicate with the senior member of COMPANY and stated, "I can't do any of this work for you.   I am on admin leave from usace [*sic*]. Conflict of interest.   May be fired."

16)     SELLERS regrets and is remorseful for her actions and her false statements to the agents.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date:   7/12/19                         By:   _____
                                              JAIME A. RAICH
                                              ASSISTANT UNITED STATES ATTORNEY

Date:   7/12/19                         By:   _____
                                              PAUL D. PETRUZZI
                                              ATTORNEY FOR DEFENDANT

Date:   7/12/19                         By:   _____
                                              TRACEY JORDAN SELLERS
                                              DEFENDANT

6